IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| COUNCIL 31 OF THE AMERICAN FEDERATION OF STATE, COUNTY, and MUNICIPAL EMPLOYEES, AFL-CIO, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 11-3203 |
| PAT QUINN, Governor of the State of Illinois; MALCOLM WEEMS, the Acting Director of the Illinois Department of Central Management Services, and the STATE OF ILLINOIS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

The Court now considers Plaintiff Council 31 of the American

Federation of State, County, and Municipal Employees, AFL-CIO's

("AFSCME") Motion for Temporary Restraining Order, or Alternatively,

For a Preliminary Injunction.  See d/e 9 (Injunction Motion).  The Court

also considers Defendant Governor Pat Quinn's, Defendant Malcolm

Weems', and Defendant State of Illinois' Motion to Dismiss (d/e 7). For the reasons stated below, the Injunction Motion will be DENIED and the Motion to Dismiss will be GRANTED.

## RELEVANT FACTS

AFSCME is the main union representative of the employees who work for Defendants, Illinois Governor Pat Quinn and his Acting Director of the Illinois Central Management Services Malcolm Weems. AFSCME negotiated a collective bargaining agreement with the State of Illinois effective from September 5, 2008, to June 30, 2012 (the "CBA").

The CBA sets forth a schedule of general wage increases that provides for a 1.5% increase on 01/01/09, a 2.5% increase on 7/01/09, a 2% increase on 1/01/10, a 2.0% increase on 07/01/10, a 2.0% increase on 01/01/11, a 4% increase on 07/01/11, and a 1.25% increase on 01/01/12. The CBA provides for step and longevity increases as employees pass their "anniversary dates" during each fiscal year. AFSCME has agreed to wage concessions in the CBA twice in the last 18 months to address state budgetary shortfalls.

In January 2010, the State and AFSCME 31 agreed to $300 million in changes to the CBA in order to address the State's projected budgetary shortfall for the 2011 fiscal year. In the fall of 2010, the State and AFSCME again negotiated cost-savings agreements. The two cost-savings agreements saved the State an additional $100 million in the State budget for the 2012 fiscal year.

On May 31, 2011, the State legislature passed appropriations measures to fund State government for the 2012 fiscal year. The budget for the State for the 2012 fiscal year is approximately $58.5 billion. The general revenue portion of that budget, which funds the operations of the agencies subject to the Governor, is approximately $32 billion. On June 30, 2011, the Governor approved those measures. The Governor identified $376 million in budget cuts that he was implementing by line-item veto. Id. The parties do not indicate what effect these budget cuts have had on their dispute other than to say that the cuts will prevent raises due under the CBA.

On July 1, 2011, Defendants enacted emergency rules amending

Illinois' State Pay Plan. That same day, Director Weems issued a Memorandum freezing the general wage increases due under the CBA and cost-savings agreements to AFSCME-represented employees in 14 state agencies for fiscal year 2012. The Memorandum also froze the step and longevity increases required by the CBA. The emergency rules permanently eliminated $75 million in pay raises due to 30,000 State employees under the express terms of the CBA.

On July 8, 2011, AFSCME filed a 5-count Complaint against Defendants. <u>See</u> d/e 1. That Complaint was superseded by an Amended Complaint AFSCME filed on July 20, 2011. The Amended Complaint alleges that Defendants: (1) are liable under 42 U.S.C. § 1983 because they impaired a contract in violation of Article I of the U.S. Constitution; (2) are liable under § 1983 because they violated AFSCME-represented employees' 14th Amendment right to equal protection; (3) impaired a contract in violation of Illinois law; (4) violated AFSCME-represented employees' right to equal protection under Illinois law; and (5) breached a contract in violation of Illinois law. <u>See</u> d/e 4.

On August 9, 2011, Defendants filed a Motion to Dismiss. <u>See</u> d/e 7. Defendants argued that the Eleventh Amendment bars any monetary relief and that AFSCME's allegations fail to state a claim. Alternatively, Defendants contended that this Court should abstain from hearing this case because similar claims are pending in an unresolved state court case. <u>Id.</u>, <u>citing</u> <u>State of Illinois (Central Management Services) v. American Federal of State, County, and Municipal Employees, Council 31</u>, Case No. 11-CH- 25352 (Cook County Circuit Court) (Billik, J.) (appeal of arbitration award issued in <u>In the Matter of the Arbitration Between State of Illinois and AFSCME Council 31</u>, Case No. 10.25 (Benn, Arbitrator (July 19, 2011))(requiring State to immediately pay 2% raises)). The state court case is currently stayed pending resolution of this case.

On August 19, 2011, AFSCME filed its Injunction Motion. On August 25, 2011, AFSCME responded to Defendants' Motion to Dismiss. AFSCME's Memorandum in Opposition to Defendants' Motion to Dismiss concedes that Count III (impairment of a contract in

violation of Illinois law); Count IV (violating AFSCME-represented employees' right to equal protection under Illinois law); and Count V (breach of contract in violation of Illinois law) must be dismissed.  See id. (d/e 12) at 2-3.  AFSCME also concedes—in apparent recognition of the Eleventh Amendment hurdle—that this Court does not have authority to award any backpay sought by AFSCME.  Id. at 3.  However, AFSCME still seeks a declaratory judgment concerning the pay freeze's alleged unconstitutionality under Article 1, § 10 of the United States Constitution.

This Court set the Injunction Motion for hearing on August 31, 2011.  At that hearing, counsel for AFSCME stated that AFSCME was not seeking injunctive relief as to its 14th Amendment Equal Protection claim.  Rather, AFSCME sought injunctive relief based on Count I—Defendants' alleged liability under 42 U.S.C. § 1983 due to their impairment of a contract in violation of Article I of the U.S. Constitution.

At the August 31, 2011 preliminary injunction hearing, AFSCME

tendered and this Court admitted documentary evidence consisting of copies of the CBA, Defendants' various memorandums, a budget forecast, etc.  See <u>AFSCME's Exhibits 1-11</u>.  AFSCME also presented live testimony via witness Anne Irving, AFSCME's Director of Public Policy. Ms. Irving testified extensively about Illinois' budget and the appropriations process.  Of particular importance, she stated that the Governor could use the special appropriations process to request funds from the State legislature and apply those funds to satisfy the State's financial obligations.

## VENUE & JURISDICTION

This Court has subject matter jurisdiction by virtue of the federal issue posed by AFSCME's § 1983 claim.  <u>See</u> 28 U.S.C. § 1331.  Personal jurisdiction and venue requirements are satisfied because relevant acts—Defendants' imposition of an allegedly unconstitutional pay freeze—occurred in this judicial district and all Defendants reside in Illinois.  <u>See</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (personal jurisdiction exists where a defendant "purposefully

avail[ed] [himself or herself] of the privilege of conducting activities" in

the forum state); see 28 U.S.C. §1391(b) (venue in non-diversity cases is

proper in a judicial district where any defendant resides, if all defendants

reside in the same State).

## STANDING

An association such as AFSCME has standing to represent its

members if:  (1) its members could sue in their own right; (2) the

interests asserted are germane to AFSCME's purpose; and (3) individual

AFSCME members are not needed to participate.  See Hunt v.

Washington State Apple Advertising Comm'n, 432 U.S. 333, 343

(1977).  Each AFSCME-represented State employee who is not getting a

pay raise can allege an injury in fact and could sue in his or her own

right.  Because AFSCME represents State employees on salary and other

work-related issues, the interests at issue here are germane to AFSCME's

purpose.  Individual AFSCME members need not participate in this

lawsuit because neither the claims nor the relief sought require

individualized proof.  Accordingly, AFSCME has standing.  Id.

# PRELIMINARY INJUNCTION STANDARD

A party seeking a preliminary injunction must initially demonstrate: (1) some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) irreparable harm if preliminary relief is denied. <u>See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.</u>, 549 F.3d 1079, 1086 (7th Cir. 2008). "These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." <u>See Judge v. Quinn</u>, 612 F.3d 537, 546 (7th Cir. 2010), <u>citing Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.</u>, 582 F.3d 721, 725 (7th Cir. 2009). If, however, the party has met the initial threshold of showing a likelihood of success, the court then "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." <u>Judge</u>, 612 F.3d at 546. In balancing the harm to each party, the court should also consider the public interest.

Id.; see also Sierra Club v. Franklin County Power of Illinois, LLC, 546 F.3d 918, 936-37 (7th Cir. 2008) ("public interest" factor established by consideration of decreased emissions and improved public health that would result from permit requirement).

To establish a likelihood of success on the merits, a plaintiff must demonstrate "some prospect of prevailing on the merits" of its claim. Hoosier Energy, 582 F.3d at 730. AFSCME is seeking to hold Defendants liable for constitutional deprivations under 42 U.S.C. § 1983. To state a claim pursuant 42 U.S.C. § 1983, a plaintiff must allege that a person, acting under color of state law, deprived plaintiff of a right secured by the Constitution or laws of the United States. See Christensen v. County of Boone, Illinois, 483 F.3d 454, 459 (7th Cir. 2007) (per curiam).

Section 1983 claims for damages can only be brought against a "person". Because a state is not a person, Illinois cannot be sued under § 1983. See Arizonans for Official English v. Arizona, 520 U.S. 43, 69

(1997) (a state is not a "person" for purposes of § 1983 and therefore may not be named as a defendant in a suit under that law); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (same). Accordingly, AFSCME cannot state a § 1983 claim against the State and the State must be dismissed as a Defendant.

As for the remaining Defendants, AFSCME does not specify whether Defendants are being sued in their official capacity or individual capacity. While a person can be sued in either capacity, a lack of specification requires a court to review the complaint to determine whether the claims brought and relief sought indicate the capacity in which a defendant is sued. See <u>Hill v. Shelander</u>, 924 F.2d 1370, 1373-74 (7th Cir.1991) (because inmate did not specify whether official capacity or individual claims were asserted, court reviewed content of complaint and found that allegations about guard's individual violation of inmate's right to be free from excessive force—instead of harm resulting from an official policy or custom—showed inmate was asserting individual capacity claims). Where no punitive damages are sought, a

suit is typically not an individual capacity suit.  See Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998).  When a policy or custom is the asserted basis for a constitutional injury, a suit is ordinarily an official capacity suit.  See Hill, 924 F.2d at 1373; see also Miller v. Smith, 220 F.3d 491, 494 (7th Cir. 2000).  Moreover, injunctive relief may only be obtained against public officials acting in their official capacity.  See Akins v. Board of Governors of State Colleges and Univs., 840 F.2d 1371 (7th Cir. 1988), vacated, 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319, on remand, 867 F.2d 972 (7th Cir.1988) (original decision reinstated as to named plaintiff).

Since AFSCME is not seeking punitive damages, is requesting injunctive relief, and asserts constitutional harm based on Defendants' policy to impose a pay freeze, this Court finds that AFSCME's claims are official capacity claims.  An official capacity suit is another way of pleading an action against an entity of which the officer is an agent.  See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985), citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n. 55 (1978).

Therefore, enjoining Defendants from enforcing the pay freeze would essentially be an injunction against the State.

Because Eleventh Amendment immunity applies to injunctive suits against the states as well as suits for damages, this Court must next determine whether <u>Ex Parte Young</u>, 209 U.S. 123 (1908)—a case which held that a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law—allows AFSCME to seek injunctive relief. To determine whether <u>Ex Parte Young</u> prevents suit due to a defendant's Eleventh Amendment immunity, courts inquire whether a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. <u>See</u> <u>Verizon Maryland Inc. v. Public Service Comm'n of Maryland</u>, 535 U.S. 635, 645 (2002) (citations omitted). Such relief is improper if it is "not merely ancillary but is the essence of the relief sought". <u>See</u> <u>MSA Realty Corp. v. State of Ill.</u>, 990 F.2d 288, 292 (7th Cir. 1993) (citations omitted).

AFSCME's Amended Complaint plainly alleges an ongoing

violation of Article I, § 10 of the U.S. Constitution insofar as AFSCME contends that the pay freeze is a "law" impairing contractual duties owed under the CBA. However, issuing an injunction that lifts the pay freeze would have an effect upon the State treasury that would require payment of the damages AFSCME seeks. Because lifting the pay freeze is "not merely ancillary but is the essence of the relief sought", it cannot be ordered under Ex Parte Young. See MSA Realty, 990 F.2d at 292 (citations omitted). As such, relief is impermissible and AFSCME cannot prove a likelihood of success on the merits.

Since AFSCME is unable to prove a likelihood of success on the merits, the remaining preliminary injunction factors need not be addressed. See Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086. Nevertheless, for the sake of completeness, this Court will briefly examine whether AFSCME has established no adequate remedy at law and irreparable harm.

At the preliminary injunction hearing and throughout the briefs, the parties noted that AFSCME is seeking redress in State court through

a pending lawsuit in Cook County Circuit Court. AFSCME has obtained

an arbitration award and is litigating that award in state court. See State

of Illinois (Central Management Services), Case No. 11-CH- 25352

(Cook County Circuit Court). Should AFSCME prevail in that cause,

AFSCME may be able to obtain backpay and other damages it cannot

pursue here. The existence of these concurrent proceedings shows that

AFSCME has an adequate remedy at law. See United States v. Rural

Elect. Convenience Coop. Co., 922 F.2d 429, 432-33 (7th Cir. 1991).

"An injury is irreparable for purposes of granting preliminary

injunctive relief only if it cannot be remedied through a monetary award

after trial." See East St. Louis Laborers' Local 100 v. Bellon Wrecking &

Salvage Co., 414 F.3d 700, 704 (7th Cir. 2005), citing Graham v. Med.

Mut. of Ohio, 130 F.3d 293, 296 (7th Cir. 1997). AFSCME has

quantified its damages at $75 million. AFSCME has also stated that

"[t]his is not a case where the money does not exist in the State Treasury

to honor the [CBA]." See AFSCME's Memorandum in Support of

Motion For Preliminary Injunction (d/e 10) at 12. The evidence

15

proffered at the preliminary injunction hearing and elsewhere show that the State can and does regularly seek special appropriations to pay for financial liabilities.  See, i.e., AFSCME's Memorandum In Support of Motion For Preliminary Injunction (d/e 10) at 12 ("The need to seek supplemental appropriations is a common feature of the legislative process in this State.  In the last six years, for example, the General Assembly has enacted nine supplemental appropriations bills affecting personal services lines in the State Budget.").  Since the evidence also establishes that special appropriations are regularly approved, AFSCME cannot establish irreparable harm.

Finally, AFSCME has not proven that a balancing of harms supports injunctive relief.  AFSCME argues that Defendants should be required to pay money now because projected budget shortfalls show that the State will run out of money before the end of the next fiscal year and will then be unable to pay the raises.  Denying expected pay raises can be crippling in these harsh economic times.  However, requiring the State to issue pay raises would take money already allotted for other purposes

from an underfunded budget and cause the State to run out of money even faster. AFSCME-represented employees' inability to get raises, while significant, is eclipsed by the potential harm the State would suffer if a total lack of funds were to befall it. That would threaten programs and services upon which millions of Illinoisans depend. Consequently, although this Court is sympathetic to AFSCME-represented employees' needs, the State's needs and the public interest weigh against an injunction. See Judge, 612 F.3d at 546; Sierra Club, 546 F.3d at 936-37.

## MOTION TO DISMISS STANDARD

When reviewing a motion to dismiss, a court looks at the sufficiency of the complaint, not whether the plaintiff has a winning claim. See McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000). Still, "[a] complaint must do more than merely avoid foreclosing possible bases for relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008) (quotation omitted). A complaint "must actually suggest that the plaintiff has a right to relief, by providing

allegations that raise a right to relief above the speculative level." Id. (quotation omitted).  Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327 (7th Cir. 1999).

## 1.    AFSCME's Contracts Clause Claim

Even if the Eleventh Amendment were not an issue, AFSCME's Contracts Clause claim would be subject to dismissal under Rule 12(b)(6) because AFSCME would not be able to prove that the pay raise freeze violated Article I, § 10 of the United States Constitution.  Article I, § 10—the "Contracts Clause"—provides that "[n]o State . . . shall pass any Bill of Attainder, ex post facto law, or Law impairing the Obligations of Contracts."

A party seeking to prevail on a Contracts Clause claim "must demonstrate that a change in state law has operated as a substantial impairment of a contractual relationship."  See General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992).  To prevail, a plaintiff must demonstrate:  "(1) [that there] there is a contractual relationship; (2) . . .

[that] a [subsequent] change in a law . . . impaired that contractual relationship; and (3) . . . [that] the impairment is substantial." <u>Transport Workers Union, Local 290 v. SEPTA</u>, 145 F.3d 619, 621 (3rd Cir. 1998). If these elements are met, the court then decides "whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose." <u>Id.</u>

The parties clearly have a contract by virtue of the CBA. This Court also accepts that the Emergency Rules enacted by Defendants pursuant to their executive authority under 20 ILCS 415/8, 20 ILCS 415/8b are laws because they have "the force and effect of law". <u>See Margolin v. Public Mutual Fire Insurance Co.</u>, 281 N.E.2d 728 (1972) (such rules as are lawfully adopted by an administrative agency pursuant to statutory authority have the force of law and binds the agency to them), <u>but see</u> <u>New Orleans Waterworks Co. v. Louisiana Sugar Ref. Co.</u>, 125 U.S. 18, 30 (1888) ("In order to come within the provision of the [Contracts Clause] . . . not only must the obligation of a contract have

been impaired, but it must have been impaired by a law of the state. The prohibition is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals.").

However, AFSCME cannot prove a substantial contractual impairment that was unreasonable in light of the impairment's purpose. AFSCME-represented employees continue to get paid, albeit at a rate that is 2%-4% less than what they are owed under the CBA. AFSCME presents no evidence or caselaw which establish that a failure to provide a relatively small raise constitutes a "substantial" impairment. Because the State enacted the Emergency Rules to constrain expenditures in an effort to prevent insolvency, and AFSCME-represented employees are continuing to get almost full pay and no layoffs despite the State's dire financial condition, the impairment cannot be deemed unreasonable or inappropriate in light of its legitimate purpose.

Furthermore, because the Seventh Circuit has specifically rejected the idea that the Contracts Clause is at issue when a state actor allegedly

breaks a contract with a citizen, Count I of the Amended Complaint must be dismissed regardless of any other Circuit Court authority which might have aided AFSCME's claim.  See Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248 (7th Cir. 1996); Taake v. County of Monroe, 530 F.3d 538 (7th Cir. 2008).  In Horwitz-Matthews, the Seventh Circuit stated that "when a state repudiates a contract to which it is a party it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract.  It would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution."  Id. at 1250.

2.    AFSCME's Equal Protection Claim

The 14th Amendment's Equal Protection Clause requires that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  Equal protection violations frequently occur when enactments draw distinctions among people based on a person's membership in a "suspect" class.  See Srail v. Village of Lisle, 588 F.3d 940, 943 (7th Cir. 2009), citing Martin v. Shawano-

<u>Gresham Sch. Dist.</u>, 295 F.3d 701, 712 (7th Cir. 2002). To state an equal protection claim under § 1983, a plaintiff must allege: (1) plaintiff is a member of a protected class; (2) plaintiff is similarly situated to members of the unprotected class; (3) plaintiff was treated differently from members of the unprotected class; and (4) the defendant acted with discriminatory intent. <u>McPhaul v. Board of Comm'rs</u>, 226 F.3d 558, 564 (7th Cir. 2000).

Suspect classes include race, alienage, and national origin. <u>Id.</u>, citing <u>Vision Church v. Vill. of Long Grove</u>, 468 F.3d 975, 1000 (7th Cir. 2006). Being in a public sector union, such as belonging to AFSCME, does not constitute membership in a suspect class. <u>See</u> <u>University Professionals of Illinois, Local 4100, IFT-AFT, AFL-CIO v. Edgar</u>, 114 F.3d 665, 667 (7th Cir. 1997).[1] As a general matter, non-suspect statutory classifications are presumptively valid, and will be upheld so

---

[1] In addition to the foregoing types of equal protection claims, a person can assert a "class of one" claim. <u>See</u> <u>Srail</u>, 588 F.3d at 943-44. Because <u>Engquist v. Oregon Department of Agriculture</u>, 128 S.Ct. 2146, 2148-49, 170 L.Ed.2d 975 (2008), forecloses the availability of "class of one" claims in the public employment context, this type of claim is inapplicable here and will not be analyzed. <u>See</u> <u>Gross v. Town of Cicero</u>, 619 F.3d 697, 703 (7th Cir. 2010) (recognizing that <u>Engquist</u> barred "class of one" claims from being asserted in public employment cases).

long as they bear a rational relation to a legitimate government purpose. Id., see also Regan v. Taxation With Representation of Washington, 461 U.S. 540, 547 (1983).  Under this standard of review, a defendant prevails by proffering a sound reason for a classification.  See F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 315 (1993).  In order to survive a motion to dismiss, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications".  St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 639 (7th Cir. 2007), quoting Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992).

AFSCME contends that the pay freeze violates Section 8 of Illinois' Personnel Code.  Section 8 of the Personnel Code involves the promulgation of rules for state employment based on merit and fitness. See Perez v. Civil Service Comm'n, 505 N.E.2d 1067, 1070 (1987) (the Personnel Code's purpose "is to establish a system of personnel administration based on merit"); 20 ILCS 415/8.  Because the Personnel Code has the force of law, it is a statutory classification system.  See

<u>Margolin</u>, 281 N.E.2d 728 (1972); 20 ILCS 415/8b.

However, AFSCME does not challenge the statutory classification system.  Rather, AFSCME's equal protection claim is premised on the idea that the pay freeze is unlawful because it prevents similarly-situated employees from being paid equally under the Personnel Code.  That is the extent to which AFSCME identifies a "class" for Equal Protection purposes.[2]  While AFSCME's Amended Complaint alleges that paying similarly-situated employees differently lacks a rational basis, AFSCME has not alleged any facts to overcome the presumptive validity of the wage freeze.  <u>See</u> <u>Wroblewski</u>, 965 F.2d at 460.

Given the State's budget crisis—a situation so dire that both parties agree the State will run out of money before the fiscal year ends—the pay freeze certainly promotes a cost-containment.  Since cost-containment is a legitimate governmental interest, and cost-containment is logically aided by the wage freeze, the wage freeze survives rational basis analysis.

---

[2] AFSCME does not contend that union members are being paid less than non-union members.  In fact, the evidence suggests that union members and non-union members alike in 2 of the State's 14 agencies have received scheduled pay raises despite the pay freeze.

Id.; Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001) (the

rational-basis test is a lenient standard; the government's action simply

"cannot run afoul of the Equal Protection Clause if there is a rational

relationship between the disparity of treatment and some legitimate

governmental purpose.").   Accordingly, AFSCME's equal protection

claim cannot survive because it has not met its burden of eliminating all

reasonably conceivable facts which support the pay freeze.  See Discovery

House, Inc. v. Consol. City of Indianapolis, 319 F.3d 277, 282 (7th Cir.

2003) ("the burden is upon the challenging party to eliminate any

'reasonably conceivable state of facts that could provide a rational basis

for the classification.'"), citing Heller v. Doe, 509 U.S. 312, 320, 113

S.Ct. 2637, 125 L.Ed.2d 257 (1993).

## CONCLUSION

THEREFORE, Plaintiff Council 31 of the American Federation of

State, County, and Municipal Employees, AFL-CIO's Motion for

Temporary Restraining Order, or Alternatively, For a Preliminary

Injunction (d/e 9) is DENIED.  Defendant Governor Pat Quinn's,

Defendant Malcolm Weems' and Defendant State of Illinois' Motion to

Dismiss (d/e 7) is GRANTED.  This case is CLOSED.

IT IS SO ORDERED.

ENTERED: September 7, 2011

FOR THE COURT BY:                    s/ Sue E. Myerscough
                                     SUE E. MYERSCOUGH
                                     UNITED STATES DISTRICT JUDGE